# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Odildzhon E., | Civ. No. 26-312 (JWB/DTS) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *in their official capacity as Attorney General*; Kristi Noem, *in her capacity as Secretary of the United States Department of Homeland Security*; Todd M. Lyons, *in his capacity as Acting Director of the United States Immigration and Customs Enforcement*; and David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

E. Michelle Drake, Esq., Berger Montague PC, counsel for Petitioner.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Respondents.

---

This case concerns the limited authority Congress conferred in 8 U.S.C. § 1159(a) to take a refugee admitted under 8 U.S.C. § 1157 into custody for inspection and examination. The question is beyond the basic one of whether Respondents may inspect a refugee for purposes of adjustment of status. It is whether § 1159 authorizes continued physical detention where inspection has not begun, no timeline has been provided, and custody appears untethered from the statutory purpose for which it is permitted. On the present record, it does not.

## BACKGROUND

Petitioner is from Moldova. (*See* Doc. No. 1, Petition ¶ 3.) He was admitted to the United States on February 13, 2024 as a refugee. (*Id.* ¶¶ 1, 5.) His Petition alleges that he has followed all required processes and procedures for admission as a refugee, including the considerable vetting applied prior to his arrival in the United States as well as the processes and procedures required after his arrival. (*Id.* ¶ 3.)

Applying to enter the country as a refugee is a "highly regulated process" involving multiple levels of security and biometrics screenings, interviews, and assessments involving multiple federal agencies such as the Department of Homeland Security ("DHS") and the Department of State. *See generally Pacito v. Trump*, 768 F. Supp. 3d 1199, 1211–13 (W.D. Wash. 2025).

Once a refugee has been physically present in the United States for at least a year, they must apply for adjustment of status. 8 U.S.C. § 1159(a). DHS or the Attorney General may adjust a refugee's status to lawfully admitted for permanent residence once the refugee (1) submits an application; (2) has been physically present in the United States as a refugee for at least one year; (3) falls under the definition of "refugee" under 8 U.S.C. § 1101(a)(42)(A) or is the spouse or child of someone who does; (4) is not firmly resettled in another country; and (5) is admissible as an immigrant under 8 U.S.C. §§ 1182(a) and 1159(c).

On January 9, 2026, DHS, acting through U.S. Citizenship and Immigration Services ("USCIS"), commenced an enforcement initiative in Minnesota directed at refugees who had not yet adjusted their status to lawful permanent resident. *See* Press

Release, U.S. Citizenship & Immigr. Servs., DHS Launches Landmark USCIS Fraud Investigation in Minnesota (Jan. 9, 2026). The stated focus of the initiative is to "reexamin[e]" refugees in Minnesota "who have not yet been given lawful permanent resident status" by conducting "new background checks and intensive verification" of their refugee claims. *Id.*

Petitioner was arrested by Immigration and Customs Enforcement ("ICE") on January 14, 2026. (Petition ¶ 1; Doc. No. 6, Lee Decl. ¶ 5.) At the time that Petitioner's counsel filed the Petition just before midnight on January 14, 2026, she believed Petitioner was detained in Minnesota. (Petition ¶¶ 1, 5.)

## DISCUSSION

### I.   Jurisdiction

Respondents argue this Court lacks jurisdiction over the habeas petition because Petitioner was not detained in this District at the time the Petition was filed. (*See* Doc. No. 5 at 2–3.) Based on the timing of Petitioner's detention and removal from this District, and the knowledge of Petitioner's location at the time the Petition was filed, this Court does have jurisdiction over the Petition.

Ordinarily, a habeas petition must be filed in the district of confinement and name the petitioner's immediate custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). An exception is recognized, however, where the petitioner's location is unknown at the time of filing—such as when the petitioner is in transit—or where immigration authorities have not disclosed where the petitioner is being detained or by whom, and circumstances have prevented or precluded contact with counsel. *See Ozturk v. Hyde*, 136

3

F.4th 382, 392 (2d Cir. 2025); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 393 (D.N.J. 2025). Where a proper respondent is named at the time of filing and is within the court's territorial jurisdiction, habeas jurisdiction attaches at that moment. *See Van Tran v. Hyde*, No. 25-cv-12546-ADB, 2025 WL 3171210, at *4 (D. Mass. Nov. 13, 2025). Under this exception, a later-revealed transfer outside the district does not divest the court of jurisdiction. *See id.* at *3–4; *see also Padilla*, 542 U.S. at 441 (recognizing that a district court can retain jurisdiction despite petitioner being transferred after filing).

The exception ensures that the Government's actions do not deprive individuals of their right to challenge the legality of their confinement and prevents "the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum." *Eisel v. Sec. of the Army*, 477 F.2d 1251, 1258 (D.C. Cir. 1973). As other courts have explained, the exception reflects the longstanding principle that "there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear the case and decide it." *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J. 2025).

Petitioner was detained by ICE in Minnesota on January 14, 2026, and transferred to Texas later that day. (Doc. No. 6, Lee Decl. ¶¶ 5–6.) Petitioner's counsel filed the habeas petition just before midnight, reasonably believing that Petitioner remained detained in Minnesota. (Petition ¶¶ 1, 5.) Nothing in the record reflects that Respondents disclosed Petitioner's transfer in advance, allowed for communication with counsel, or otherwise conveyed Petitioner's whereabouts at the time of filing.

Under these circumstances, habeas jurisdiction does not turn on Petitioner's

4

precise location at the moment of filing, particularly because Respondents controlled her movements and communication with counsel was limited. *See Munoz-Saucedo*, 789 F. Supp. 3d at 394; *see also Ozturk*, 136 F.4th at 392–93. Because Petitioner properly named Respondents within this Court's territorial jurisdiction based on his last known location at the time of filing, jurisdiction attached at that moment and is not defeated by his transfer. *See Van Tran*, 2025 WL 3171210, at *4; *see also Ex parte Endo*, 323 U.S. 283, 306 (1944).

Recent habeas decisions confirm that the unknown custodian exception remains necessary where Government-controlled transfers—often executed within hours of detention and before communication with counsel is possible—risk defeating timely judicial review. *See Munoz-Saucedo*, 789 F. Supp. 3d at 394. Given the circumstances of Petitioner's detention and transfer, the exception applies here. The Petition was properly filed in the District of Minnesota, and Respondents' request to deny the Petition or transfer venue is denied.

## II.   Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory

purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* 687–88.

### III.   Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

In habeas review, the question is whether the detention is authorized by statute and consistent with constitutional limits. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688 ("[T]he habeas statute … does not require courts to defer to the Attorney General's interpretation of the statute. Rather, it requires the courts to determine whether the detention is lawful.").

Respondents point out that Petitioner entered the country as a refugee over a year ago and that his status had not been adjusted to lawful permanent resident at the time of his arrest. Thus, according to Respondents, § 1159(a) authorizes Petitioner's detention.

8 U.S.C. § 1159(a) states that an individual admitted as a refugee who has been physically present in the United States for over one year "shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for

inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title."

Section 1159(a) authorizes a refugee who has been physically present in the United States for at least one year to "return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission . . . as an immigrant[.]" The statute thus permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2).

Nothing in § 1159 authorizes detention untethered from that function. Nor does the statute mandate detention, prescribe a minimum duration of custody, or reclassify an admitted refugee as an "arriving alien" or "applicant for admission." The cross-reference to § 1225 provides the procedural mechanics of inspection, not an independent or mandatory detention regime. Custody under § 1159(a) is therefore lawful only to the extent it serves the inspection and examination contemplated by the statute.

The implementing regulations confirm this limited role. *See* 8 C.F.R. § 209.1(b), (d). A refugee must submit an adjustment application and biometrics after one year of presence, and USCIS determines whether an interview or further examination is necessary. *Id.* The regulations do not require detention, and they do not contemplate prolonged custody in the absence of the statutory inspection.

Respondents claim that Petitioner's detention is based on his "fail[ure] to acquire permanent resident status within one year." (Doc. No. 5 at 1.) Such a basis for detention is illogical given that refugees are not eligible to apply for adjustment of status until they

7

have "been physically present in the United States *for at least one year*." 8 U.S.C. § 1159(a)(1)(B) (emphasis added).

Respondents' reassurances that Petitioner's detention "is not indefinite" and that his "inspection will occur in due course" also cannot justify detention. (Doc. No. 5 at 3–4.) "[W]ill occur in due course" is on its face vague and indefinite. Where inspection has not begun, no officer has been assigned, and no timeline has been provided, continued detention ceases to serve the only purpose for which § 1159 permits custody. Habeas review requires more than assurances of future action; the statute must authorize detention now, not at some indefinite point in the future.

Generally, when "unadjusted" refugees are arrested for an inspection under § 1159, ICE must determine whether to release the individual or issue a Notice to Appear indicating the removal charges "no later than 48 hours after the arrest." Policy Memorandum, U.S. Citizenship & Immigr. Servs., Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010); *see also* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d). Petitioner has already been in custody without inspection under § 1159 for more than 48 hours.

The analysis here is straightforward. Petitioner was admitted into the country as a refugee after undergoing an intensive, multi-step vetting process conducted by Respondents. Respondents arrested and detained Petitioner because he had not yet been granted lawful permanent resident status. Respondents have submitted no evidence showing an inspection under § 1159 has or will occur or whether the purpose of the purported inspection is to determine admissibility.

On the present record, Respondents have not shown that Petitioner's detention is serving the inspection and examination function authorized by § 1159(a). Where Congress has authorized detention for a limited statutory purpose, continued custody is lawful only so long as that purpose is being carried out within a reasonable period. Respondents have neither initiated inspection nor made any showing that detention is necessary to accomplish it.

The appropriate habeas remedy here is conditional relief. Respondents shall either (1) commence and complete inspection and examination pursuant to § 1159(a) within seven days of this Order, or (2) immediately release Petitioner from custody. Continued detention beyond that period is not authorized. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention"). Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1. The Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED IN PART**.

2. Respondents shall, within seven (7) days of this Order, either:

    a. Complete inspection and examination of Petitioner pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a

      specified lawful basis; or

    b.    Immediately release Petitioner from custody in Minnesota, and file a notice confirming the date, time, and location of release.

3.    Pending compliance with this Order, Respondents shall not transfer or remove Petitioner from this District. If Petitioner has been transferred outside the District of Minnesota, Respondents shall immediately return Petitioner to this District, file a notice confirming the date and time of return, and complete the requirements of the preceding paragraph within seven (7) days of Petitioner's return. Under either circumstance, Petitioner has the right to have counsel attend their inspection.

4.    Nothing in this Order adjudicates the merits of Petitioner's adjustment application or removal proceedings, if any.

5.    The relief ordered here is intended to ensure that habeas review is meaningful. If Petitioner is released pursuant to this Order, Respondents may not re-detain Petitioner on the same factual record and under the same statutory theory rejected by this Order, absent materially changed circumstances or a different and lawful basis for custody. Nothing in this Order precludes Respondents from taking lawful action supported by new fact or distinct statutory authority.

6.    Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 17, 2026                    *s/ Jerry W. Blackwell*
                                                      JERRY W. BLACKWELL
                                                      United States District Judge